BROWN v. EMMETT. See Case No. 2,029.

BROWN (FARROW v.). See Case No. 4,689.

BROWN (FOOTE v.). See Case No. 4,909.

## Case No. 2,006.

BROWN v. GALLOWAY.

[Pet. C. C. 291.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1816.

EVIDENCE—OFFICIAL CERTIFICATE—DEPOSITIONS—PRESUMPTION—CUSTOM AND USAGE—LAND WARRANT—EJECTMENT — TITLE TO SUPPORT — EVIDENCE—MESNE PROFITS.

1. A certificate, of the secretary of the commonwealth of Pennsylvania, "that the certificate annexed thereto, of the receiver general, is a true extract from a certificate of that officer, dated 2d May, 1794, now remaining on file in the office of the secretary of the commonwealth; which contains the names of persons, to whom warrants were granted, and the amount of money paid, sealed with the lesser seal at that time; and that the usual practice is not to affix the seal of his office, until it appears by a certificate, that the purchase money has been paid;" is not evidence, to show at what time the seal of the governor was affixed to a warrant.

2. The deposition of a witness, who resides three hundred miles from Philadelphia, taken

---

[1] [Reported by Richard Peters, Jr.]

de bene esse, cannot be read in evidence; unless the witness was served with a subpoena, and it appears, that from some sufficient reason he cannot attend.

[See Banert v. Day, Case No. 836.]

3. A patent for land, lying in the New Purchase in Pennsylvania, is evidence, that all the previous steps leading to it had been regularly pursued, unless the contrary is proved by the person, who attempts to impeach the validity thereof.

[Cited in Whitford v. Clark County, 119 U. S. 525, 7 Sup. Ct. 308.]

[See Polk v. Wendell, 9 Cranch (13 U. S.) 87, 98.]

4. The certificate of a public officer, of acts done in the execution of his duty, is not to be impeached by the evidence of a single witness.

5. A warrant for land is, according to long and uniform practice, dated on the day the application is made for the land, although it is retained in the office until the purchase money is paid; when, and not before, it issues to the party.

[Cited in Herron v. Dater, 120 U. S. 474, 7 Sup. Ct. 625.]

6. The date of the warrant, and not that of the payment of the purchase money, is the period from which the two years, allowed for the settlement of lands in the New Purchase, are to run.

7. It is not necessary to produce a conveyance from a warrantee, whose name was only made use of for the purpose of enabling a party to appropriate the tract surveyed in his name, and the application for which was made at the same time with those of many others laid down in a connected plot.

8. The title of the warrantee, if he was really the applicant for the land, could not be supported at law, against one who had paid the purchase money, and obtained a patent for the land; the remedy of the warrantee, could only be asserted and decided in a court of equity.

[Cited in Herron v. Dater, 120 U. S. 472, 7 Sup. Ct. 624.]

9. In a trial at law, the production of a patent for a tract of land, is sufficient to remove all legal objections to the title of the patentee, on the ground of non-performance of the conditions on which the patent was to issue.

10. When the term of the plaintiff in ejectment expires before the trial, although possession of the property cannot be recovered, yet he may proceed for damages, for the trespass, and for the mesne profits.

11. In an action for mesne profits, the confession of entry by the defendant in the ejectment, is sufficient evidence to enable the plaintiff to recover damages, and mesne profits; aliter, when the judgment in the ejectment was obtained by default.

At law. Ejectment for land in Erie county, north and east of the Ohio and Alleghany rivers and Conewango creek. The plaintiff's title consisted of a patent to certain persons, as trustees for the Population Company of Pennsylvania, and a lease by the trustees in 1808, to the lessor of the plaintiff for seven years, to commence from the 1st of March, 1807. The patent, which bore date on the 26th July, 1799, recited, that it was granted on a warrant issued to William Giss, the 30th of May, 1792, which had been transferred by him to the patentees. It was proved, that the purchase money had been paid, by the patentees, on the 14th of June, 1794.

The defendant's title, was founded on a vacating warrant, issued to him in March, 1804, reciting, that the conditions, upon which the warrant to Giss had been granted, had not been complied with; the application for which warrant was accompanied with affidavits, stating, that Galloway had made an actual settlement on this land, in 1779, prior to the 26th of July. Under this warrant there was a regular survey, for the defendant.

The plaintiff proved the defendant to have been in possession of the land in question, in the year 1808, when this suit was brought.

In order to show, at what time the lesser seal was affixed by the governor to the plaintiff's warrant, the defendant offered in evidence, a certificate of the secretary of the commonwealth, "that the certificate annexed of the receiver general, is a true extract from a certificate of that officer, dated the 2d May, 1794, now remaining on file in the said office; which certificate contains the names of four hundred persons, to whom warrants were granted for land, and of the amounts of the purchase money; sealed with the lesser seal at that time; and that the usual practice is, not to affix the seal in this office, till it appears by a certificate from the receiver general, that the purchase money has been paid."

This evidence was objected to for the following reasons: First, that the certificate of the receiver general, is stated to be only an extract from the original certificate, sent to the office of the department of state. Second, that it is a copy of a copy; whereas a certificate might and ought to have been produced, from the office of the receiver general. Third, that the certificate of the secretary does not state, that he obtained his knowledge of the time when the seal was affixed, from the records of the office. Fourth, that he certifies what was the practice of that office, which if it existed, ought to have been proved in the usual way.

BY THE COURT. This certificate is offered for no other purpose than to show, when the seal was affixed to this warrant, and if this had been shown by a certified copy from the records of the office, or if the officer had certified any regular documents of the office, by which it would appear, that the seal was affixed at any particular time, it would have been proper evidence. The certificate would then have been of an official act. But it is obvious, that this officer, by certifying what was the practice of the office, which certainly cannot be proved in this way, had come to the conclusion, that the seal was affixed at the time he mentions; because it was the practice of the office, not to affix the seal, until it appeared that the money was paid. The certificate is therefore clearly inadmissible.

The defendant offered in evidence, the

deposition of John Cochran, taken de bene esse, before a judge of the common pleas of this state, who certifies, that the witness resides three hundred miles from Philadelphia, and that the plaintiff was notified and attended. This deposition was objected to, for the following reasons. First, that it is a de bene esse deposition, and no proof is given, that the witness has been served with a subpoena, and cannot attend. Second, the deposition was not delivered into court by the magistrate, nor did it come sealed to the court. Third, that the notice to the plaintiff is not produced. Fourth, it is not certified, that it was written, by the magistrate, or, by the witness, in his presence.

BY THE COURT. It has been decided by this court, and such undoubtedly is the law, that a deposition taken de bene esse, cannot be read, unless the witness appears to have been served with a subpoena, and it does appear, that, from some sufficient cause, he cannot attend. The deposition was rejected.

The counsel for the plaintiff admitted, that he could not ask for a verdict to recover possession of the land, since his lease was now expired; but that he was entitled to damages for the trespass, if the lessor of the plaintiff had a good title to the land, when this ejectment was brought. Runn. Eject. 404; 2 Strange, 1056; Co. Litt. 285.

The objections made by the defendant to the title of the Population Company, under whom the lessor of the plaintiff claims, were; first, that the plaintiff has not shown, that his warrant was entered with the deputy surveyor, as required by the act of assembly of the 3d of April,1792; prior to the commencement of the defendant's title by settlement. Second, because the plaintiff has not shown a regular survey to have been made on the ground, as required by the act of assembly, of 8th April, 1785 [2 Smith's Laws Pa. 321], § 9. Third, although the return of the surveyor, which was read in evidence states, that this land was surveyed on the 10th of June, 1795, yet it is not shown, that this return was made, prior to the defendant's settlement. Fourth, that the warrant, though it always bears date the day of the application, does not take effect, until the purchase money is paid, which in this case was in June, 1794; from within two years of which time, the settlement and improvements required to be made, by the act of the 3d April, 1792, ought to have been made, but of which no evidence is given; nor could the party excuse himself for not performing this condition, at least for six months of the time, the treaty of Grenville having put an end to Indian hostilities in the year 1795. Fifth, the plaintiff has produced no deed of conveyance, to the Population Company from Giss, the warrantee, without which he was not entitled to a patent. [Wilson v. Mason] 1 Cranch [5 U. S.] 53; 2 Smith's Laws Pa. 190, 205; [Com. v. Coxe] 4 Dall. [4 U. S.] 197.

It was contended, that the recitals in this patent, which state a performance of the conditions, on which the party could obtain a patent, are only evidence between the state and the grantee, and persons claiming under the state, subsequent to the patent; but that they are not even prima facie evidence, between the grantee and the defendant, whose title by settlement, commenced prior to the grant. 4 Bin. 213, 235. As to a verdict for damages, it was insisted, that in case of a disseisin, the disseisee cannot maintain trespass quare clausum fregit, without proving an actual entry, which has not been proved in this case; and if so, the plaintiff cannot turn an action of ejectment into an action of trespass, so as to recover damages or mesne profits, without making the same proof. Mass. 483; 3 Bl. Comm. 209; Runn. Eject. 441.

The plaintiff's counsel cited the case of Phillips v. Wilson [Case No. 11,109], and Bowne v. Arbuncle [Id. 1,742] (decided in this court); also, 2 Smith's Laws Pa. 205; 3 Smith's Laws Pa. 184; 4 Bin. 239.

WASHINGTON, Circuit Justice. There are two principal questions in this cause: First, had the lessor of the plaintiff a good title to the possession of this land, at the time when this suit was brought? and if he had; then, secondly, is he entitled to a verdict, and of what nature?

First, the plaintiff has produced a regular paper title to the Population Company, under whom he claims; that is to say, a patent dated the 26th July, 1799, and also a lease from the trustees of that company to himself. The defendant has attempted to impeach this title, by insisting that no proof has been given, to show that the acts which the law requires to be performed, previous to the emanation of the grant, were performed. It is contended, that he has failed to prove, that the warrant to Giss was entered by the deputy surveyor in his book, prior to the inception of the defendant's title; that it was regularly surveyed on the land and returned; or that the grantee of the warrant, made such a settlement as the law required, within two years from June, 1794, (which it is insisted is the only legal date of the warrant,) or accounted for his not having done so. These objections have been answered in detail, by the plaintiff's counsel; but the short and conclusive answer is, that it was not necessary for the plaintiff to prove the regularity of his proceedings antecedent to the patent, which as between him and the state, or the defendant, is to be considered as evidence, that all the previous steps leading to this consummation of the title, had been regularly pursued, unless the contrary is proved by the person who attempts to impeach the validity of the patent. This point has been long since decided in this court; and most uncertain and precarious would be the situation of the land titles in this state,

if a patentee of land could not rest with some degree of confidence on this evidence, but must be called upon at all times, when intruders or others thought proper to question it, to prove not only that his own acts in pais but those of the public officers concerned in the execution of other acts, and entrusted by the public to do them, were regularly performed. It has been contended, that the inception of the defendant's title by settlement, was prior to the date of the patent in question, and, that in such a case the rule above stated does not apply. I do not admit that this would affect the rule, if the fact were as the counsel has stated it. But such a settlement is not proved, and the only evidence relied upon as proof of it, is, the recital in the vacating warrant granted to the defendant, and some affidavits which accompanied the application; but the latter are not evidence in this cause, and the former would be no evidence against the plaintiff, upon the defendant's own rule as it was laid down by his counsel.

The question is, has the defendant given any evidence to impeach the patent under which the lessor of the plaintiff claims? He contends, that the land could not have been regularly surveyed, because two of the corner trees, called for in the survey, could not be found by a witness who was examined. And is the certificate of a public officer, stating that on a certain day, now twenty years past, this land was surveyed, to be discredited by the unsuccessful efforts of a stranger to find all the corners of the land? To admit exparte evidence like this, for such a purpose, would be highly unreasonable. It does not appear that the witness made a regular survey of the land, that he went to the real corners, or that the plaintiff or any other person on his behalf, or who was enabled to give the necessary information for tracing the lines, was present. Such evidence therefore can have no weight. As to the necessity of proving a settlement, or a prevention and persistence, which it is contended could not exist in this case, the whole argument proceeds upon a mistaken notion, that the time of the payment of the purchase money, constitutes the only real date of the warrant. The warrant, according to long and uniform practice, is dated as of the day of the application, although it is retained until the purchase money is paid, when, and not before, it issues to the party. The application constitutes an inchoate contract between the state and the individual, by which the former agrees to permit the latter to appropriate a certain quantity of land, and to furnish him with the proper authority to make this appropriation, upon his paying the purchase money. When the money is paid, and the warrant received, the purchaser is obliged to pay interest from the day of the application, because that was the date of his contract, and of his obligation to pay. As between the state and the individual, the contract therefore has its inception and takes effect from the day of the application. But, if the latter does not within a reasonable time pay the purchase money and take out his warrant, third persons may take advantage of his laches, and defeat the prior right which he had acquired by his application. As to third persons, therefore, the right of the first applicant dates from the payment of the purchase money. But, that the date of the warrant, is the period from which the two years are to run, within which the settlement is to be made, is manifest from the words of the law, and has been so decided by this court, and by the supreme court, and is consistent with the nature of the contract, and the policy of the state.

The last objection to the title of the lessor of the plaintiff, is, that no deed has been produced from Giss, to the Population Company. This was not necessary. We cannot but know, from the evidence in this cause, that Giss is a mere man of straw, that his name was used by the Population Company for the purpose of enabling them to appropriate this tract, being one out of some hundreds, applied for by that company at or about the same time, and which were laid down on the connected plot. But were it otherwise, still, upon general principles, in an action at law against this very applicant, the equitable title of the real applicant, cannot stand in the way of one, who has paid the purchase money and has obtained a patent; much less against a third person. If Giss has any title, it is one which could only be asserted and decided upon, in a court of equity. But on a trial at law, it is sufficient for the plaintiff to produce his patent, and thus to clear away all legal objections which may be made to it, on the ground of a non-performance of the conditions, on which the patent was to issue. As to an outstanding equitable title in a third person, if any such existed, it can afford no shelter whatever to the defendant in this ejectment.

If, then, the lessor of the plaintiff had a legal title to this land, at the time at which this suit was instituted, the only remaining question is, whether he is entitled to a verdict for damages, that title having since expired? The cases referred to by the plaintiff's counsel, prove, that where the term expires before the trial, so that the plaintiff cannot recover the possession, he may proceed for damages for the trespass, and for mesne profits. No contradictory authority has been mentioned by the counsel for the defendant, but they have contended, that since, upon the general principle of law, trespass quare clausum fregit, will not lie by a disseisee, before he has made an actual entry, the plaintiff cannot convert an ejectment into an action of trespass, and demand damages without making the like proof. The answer to this argument is, that in this action the entry has been confessed, and

this confession is sufficient for every purpose, unless where an actual entry is necessary to complete the plaintiff's title to the land. That this confession is sufficient to entitle the plaintiff to recover damages and mesne profits, is evident from the consideration, that in an action for mesne profits, where the confession has been made, it is sufficient for the plaintiff to produce the verdict and judgment, without proving either a title to the land, or an entry under the judgment. But where the judgment is obtained by default, an entry must be proved. 6 Bac. Abr. 625. As to the amount of damages, the jury are the only proper judges; there is no general rule, and the quantum depends on the circumstances of the case.

Verdict for plaintiff, for one dollar damages.